IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

Case No: _____

SAMANTHA BOULDRY, EULA HUFF, SANDRA LORENZ, and JANET ROBERTS on behalf of themselves and the class of all others similarly situated,

      Plaintiffs,

vs.

C.R. BARD, INC., a corporation of the State of New Jersey and BARD PERIPHERAL VASCULAR, INC., a corporation of the State of Arizona and DOE DEFENDANTS 1 through 20, INCLUSIVE,

      Defendants.

_____ /

## DEFENDANTS BARD PERIPHERAL VASCULAR, INC.'S AND C.R. BARD, INC.'S NOTICE OF REMOVAL

Defendants Bard Peripheral Vascular, Inc. ("BPV") and C.R. Bard, Inc. ("Bard"), by and through their undersigned counsel and pursuant to the applicable provisions of the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, file this Notice of Removal of the above cause from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, where the same is now pending under Case No. 50-2012-CA-013660, to the United States Court for the Southern District of Florida, West Palm Beach Division. In support of this Notice of Removal, Defendants show the following:

24596088.1

I.      **BACKGROUND**

Plaintiffs Samantha Bouldry, Eula Huff, Sandra Lorenz, and Janet Roberts are Florida residents and were allegedly implanted with inferior vena cava ("IVC") filters manufactured by Defendants. (*See* Compl. ¶¶ 3-6)  The filters are designed to be implanted in the inferior vena cava to prevent embolus. (Declaration of Kim Romney ¶ 5, hereinafter "Romney Decl.," attached hereto as Exhibit A)  All four named Plaintiffs' filters remain implanted. (Compl. ¶¶ 3-6)  None of the named Plaintiffs has experienced filter fracture, filter migration, or any other type of filter failure. (Compl. ¶¶ 3-6)

On July 26, 2012, Plaintiffs filed this class action against Defendants in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.  BPV is an Arizona corporation with its principal place of business in Arizona. (Romney Decl. ¶ 3)  Bard is a New Jersey corporation with its principal place of business in New Jersey. (*Id.* ¶ 4)  Plaintiffs seek relief in the form of medical monitoring to detect future alleged injuries, apparently on behalf of a class of all Florida residents[1] currently implanted with Recovery®, G2®, and G2 Express® IVC filters. (Compl. ¶¶ 2, 16, 19)

All of the process, pleadings, and orders served to date on BPV are attached hereto as Exhibit B.

---

[1] While Plaintiffs' Complaint defines the putative class generally as "all persons" who have been implanted with Defendants' IVC Filters that remain within their anatomy, elsewhere Plaintiffs indicate that the class action is limited to Florida residents who were implanted in Florida. (*See* Compl. ¶ 13 ("All Plaintiffs and the putative class are all citizens of the State of Florida and all received their IVC filters while residing in the State of Florida.")).  For the purposes of this Notice of Removal, Defendants will assume that the class is limited to Florida plaintiffs only.  However, even if the putative class was not so limited, this action would still be removable under controlling law.

## II. REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IS PROPER BECAUSE CAFA'S STATUTORY REQUIREMENTS FOR REMOVAL ARE SATISFIED

In 2005, Congress enacted the Class Action Fairness Act ("CAFA").  Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  CAFA's removal provision provides that in diversity cases falling within CAFA's jurisdictional requirements, any defendant, including in-state defendants, can remove an action to federal court.  *See* 28 U.S.C. § 1453; *Ventimiglia v. Tishman Speyer Archstone-Smith Westbury, L.P.*, 588 F. Supp. 2d 329, 334 (E.D.N.Y. 2008) (citing *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006)).  CAFA applies even if all defendants do not consent to removal.  28 U.S.C. § 1453(b).  Once a removal notice is filed, the entire action is removed.  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1196 (11th Cir. 2007).

Under CAFA, the defendant must show that the jurisdictional requirements supporting removal are satisfied:  (1) the number of plaintiffs in all proposed plaintiff classes exceeds one hundred [28 U.S.C. § 1332(d)(5)(B)]; (2) any member of the plaintiff class is diverse from any defendant [*id.* § 1332(d)(2)]; and (3) the aggregate of the claims of individual class members exceeds $5,000,000, exclusive of interest and costs [*id.* § 1332(d)(2)].  *See also Lowery*, 483 F.3d at 1193-94.  CAFA also provides narrow exceptions to the removal rule, which are designed to keep purely local matters and matters of particular state concern in the state courts.  *Id.* § 1332(d)(3)-(5).  This case satisfies the statutory requirements for removal, and none of the exceptions applies.

### A. The Putative Class Exceeds 100 Members And The Parties Are Minimally Diverse.

To remove a class action under CAFA, the number of putative class members in all proposed plaintiff classes in the aggregate must be at least 100 persons.  28 U.S.C. § 1332(d)(5)(B).  Further, CAFA requires one of the following conditions regarding diversity of citizenship to be satisfied as of the date Plaintiffs filed their complaint:  (1) any member of a

class of plaintiffs is a citizen of a State different from any defendant; (2) any member of a class of plaintiffs is a foreign state or citizen or subject of a foreign state and any defendant is a citizen of a State; or (3) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.  *Id.* §§ 1332(d)(2), (d)(7).  Both requirements are satisfied here.

First, Plaintiffs acknowledge in the Complaint that the proposed class "consists of thousands of members." (Compl. ¶ 20)  Further, sales figures show that 18,544 IVC filters have been sold in Florida to date.  (Romney Decl. ¶¶ 7-9); s*ee  Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir. 2010) (declaration of defendant's CFO setting forth facts in support of removal could be considered as part of district court's removal analysis).  Even taking into account the possibility that not all IVC filters sold have been used to treat patients and that some filters were placed only temporarily, Plaintiffs' express acknowledgment and Defendants' sales data each show that the proposed plaintiff class here consists of far in excess of 100 persons.

Second, Bard is a New Jersey corporation with its principal place of business in New Jersey.  (Romney Decl. ¶ 4)  BPV is an Arizona corporation with its principal place of business in Arizona.  (*Id.* at ¶ 3).  At the same time, according to the Complaint, all named Plaintiffs and the putative class are citizens and residents of Florida.  (Compl. ¶¶ 3-6, 13, 20)  Because at least one putative class member is a citizen of a state (Florida) different than the state of at least one Defendant (New Jersey, Arizona), CAFA's minimal diversity of citizenship requirement is satisfied.

### B.   The Amount In Controversy Exceeds $5,000,000 In The Aggregate.

Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs . . . ."  28 U.S.C. § 1332(d)(2).  The amount in controversy is determined by aggregating the claims of all members of the putative class.  *See id.* § 1332(d)(6).  Here, the Complaint alleges

that the case exceeds Florida's state law statutory minimum of $15,000, but does not allege a specific amount in controversy as to each individual Plaintiff or the putative class as a whole. (Compl. ¶ 12) Neither does the Complaint aver that the amount in controversy is below the jurisdictional threshold under CAFA. Nevertheless, based on the evidence accompanying this removal notice, the amount of a recovery conceivably obtained by this putative medical monitoring class, if certified, will exceed the $5,000,000 aggregate amount in controversy.

In that regard, where the jurisdictional amount is not specified in the complaint, a court may consider the removal notice and attached documents concerning the amount in controversy. *Pretka*, 608 F.3d at 754 (removing defendant may make "specific factual allegations establishing jurisdiction and . . . support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations"); *accord Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (citing *Pretka*); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed."). Moreover, "[t]he substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation. . . ." *Pretka*, 608 F.3d at 755; *see also Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (defendant's proffered evidence, consisting of information obtained from related lawsuits in other jurisdictions and counsel's affidavit, was sufficient to satisfy CAFA's amount in controversy requirement).

The evidence supporting the amount in controversy need not, in turn, meet some elevated standard of proof. A reasonable inference is sufficient: "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it. . . .

The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Pretka*, 608 F.3d at 754 (citations omitted).

Defendants have marshaled several key pieces of evidence in support of their amount in controversy allegations. This is not a situation where a removing party simply relies on "naked pleadings" without a "link" between the other similar cases and the present case. *Pretka,* 608 F.3d at 753-54 (discussing *Lowery*). As set forth below, there are several key links between this case and other nearly identical actions filed in other states. These links, and the damages estimates contained in the expert reports of Jeffrey Hull, M.D., clearly show that the amount in controversy due to Plaintiffs' medical monitoring allegations exceeds $5,000,000.

"[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of removal . . ." *Gayvont v. Davol, Inc.*, No. C.A. 07-1966ML, 2008 WL 2433258, at *2 (D.R.I. Feb. 26, 2008) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 291 (1938)). The Complaint in this case specifically seeks classwide medical monitoring in the form of "regular and frequent imaging studies . . . at least once or twice annually."[2] (Compl. ¶ 89) In support of this allegation, Plaintiffs cite to – and rely on -- an article by Jeffrey Hull, M.D., entitled *Retrieval of the Recovery Filter after Arm Perforation, Fracture, and Migration to the Right Ventricle*, J. Vasc. Interv. Radiol. 1107-11 (Vo. 19 2008), in which Dr. Hull allegedly recommends "imaging with unenhanced abdominal CT to look for arm perforation, fracture, or migration to further evaluate the scope and risk posed by this [the Recovery] filter." (Compl. ¶ 89 n.14)[3]

---

[2] In making the analysis here for removal purposes, Defendants do not suggest that any classwide relief is legally appropriate or called for. Defendants undertake this analysis only to show how the allegations in this Complaint support CAFA's amount in controversy requirement.

[3] Plaintiffs cite to Dr. Hull's article in other places in the Complaint as well. (*See* Compl. ¶ 52 n.7, ¶ 53 n.8) Plaintiffs' Complaint also cites to a different article co-authored by Dr. Hull entitled *Bard Recovery Filter: Evaluation and Management of Vena Cava Limb Perforation, Fracture and Migration*, J. Vasc. And Interv. Radiol. (November 2008). (*See* Compl. ¶ 51 n.5)

Plaintiffs' reliance on Dr. Hull's article in their Complaint is important because it provides a key link between this case and similar cases filed in other states. Plaintiffs' Complaint in this regard is nearly identical to actions filed in California, Arizona, and North Carolina also alleging claims for medical monitoring as a result of Bard's IVC filters. Indeed, a comparison of Plaintiffs' Complaint here to the complaints filed in those other actions reveals almost verbatim allegations regarding the necessity and extent of medical monitoring. (*Compare* Compl. ¶¶ 88-93, *with* Compl. in *Anderson v. C.R. Bard, Inc.*, No. BC444286, Exhibit 1 to Declaration of Steven J. Boranian, hereinafter "Boranian Decl.," attached hereto as Exhibit C ¶¶ 83-88, Compl. in *Belusko v. C.R. Bard, Inc.*, No. CV2009-034694, Exhibit 1 to Declaration of Richard North, hereinafter "North Decl.," attached hereto as Exhibit D ¶¶ 50-54, *and* Compl. in *Clark v. C.R. Bard, Inc.*, No. 1:09-cv-826, Exhibit 2 to North Decl. ¶¶ 38-42) All four complaints contain the same citation to Dr. Hull's article. (*See* Compl. ¶ 89 n.14; *Anderson* Compl. ¶ 78 n.14; *Belusko* Compl. ¶ 51 n.4; *Clark* Compl. ¶ 39 n.4) And Dr. Hull already has provided an expert report in these other cases regarding medical monitoring in the three non-Florida actions. (Attached as Exhibit 2 to Boranian Decl.; Exhibits 3-4 to North Decl.) By comparing these allegations, it is readily apparent that there is a close similarity between these cases and the present case before this Court. This is clearly not a case where the record is "'bereft of detail' about whether the plaintiffs' complaint was similar to those other cases." *Pretka*, 608 F.3d at 754 (quoting *Lowery*).

Dr. Hull's reports in the three non-Florida actions are very similar. He opines in each instance that medical monitoring for plaintiffs will consist of imaging studies, which, at a minimum, include abdominal CT scans and in some cases also chest x-rays. (*See* Boranian Decl. ¶ 5; Exhibit 2 to Boranian Decl.; North Decl. ¶¶ 5-6; Exhibits 3-4 to North Decl.) If fracture and/or embolization in the IVC filter is found, according to Dr. Hull, additional imaging, including plain film radiograph study, fluoroscopy, and chest CT scans, needs to be completed. (*Id.*) Dr. Hull further opines that putative class members will require regularly scheduled visits

with a primary care physician "to monitor the condition of the filter." (*Id.*; Exhibit 2 to Boranian Decl., Ex. KK-2 at ¶ 6; Exhibit 3 to North Decl. at ¶ 6).

These reports, filed in cases with allegations nearly identical to the allegations in this case, provide the necessary evidence to support Defendants' amount in controversy argument. Dr. Hull's estimated annual cost for his recommended imaging studies alone is between approximately $1,253 and $2,699 per patient, depending on whether fracture or embolization is detected. (*Id.*) This estimate does not account for the cost of the regularly scheduled physician visits Dr. Hull also recommends. (*See id.*) Dr. Hull also suggests that "[i]t would be reasonable to continue these studies for the duration of the implant of the device or the retention of the embolized portion(s) of the device." (*Id.*)

In this case, Plaintiffs' Complaint alleges that putative class members number in the "thousands" and sales records reflect that Defendants have sold 18,544 IVC filters in Florida. (Compl. ¶ 20; Romney Decl. ¶¶ 7-9) If each patient were to receive just a single CT scan, estimated by Dr. Hull to cost at least $1,253, the jurisdictional minimum of $5 million would be exceeded if a mere quarter of these devices sold in Florida (4,636) are currently implanted—a conservative estimate and a reasonable inference given Plaintiffs' allegation that the putative class consists of "thousands" of class members. *See, e.g., Gayvont,* 2008 WL 2433258, at *2 (denying motion for remand in medical monitoring case based on amount in controversy calculation using cost of CT scans over life expectancy of 20 years multiplied by the plaintiff's allegation of "several hundred" class members). That amount would only increase as the possibilities unfold. For instance, Dr. Hull recommends yearly monitoring for the duration of the implant, which means that putative class members will need additional CT scans—at an additional cost—every year their devices remain implanted. Assuming for purpose of argument that Plaintiff's allegation of "thousands" means only 2,000 class members, yearly CT scans for those class members would cost $2,506,000 using Dr. Hull's estimates. If one multiplies that number by 20 years, the estimated amount in controversy equals $50,120,000. *See Gayvont,*

2008 WL 2433258, at *2 (calculating amount in controversy by estimating cost of CT scans over 20 year life span).

Further, according to Dr. Hull, putative class members who are diagnosed with fracture or embolization of the filter will require additional imaging on top of that, which costs at least $2,699—or double the amount of just a single CT scan. And, the amount does not account for the cost of Dr. Hull's recommended regularly scheduled physician visits.

To be clear, Defendants deny that Plaintiffs and the putative class are entitled to recover any amount for medical monitoring. But as far as removal and jurisdiction are concerned, a preponderance of the evidence shows that Plaintiffs' medical claims put into controversy an amount that well exceeds the $5,000,000 threshold.

### C. None of the CAFA Exceptions Applies Because Neither Defendant Is a Florida Citizen.

Although Defendants do not have the burden to show that the three statutory exceptions to CAFA jurisdiction are inapplicable, none applies in this case.

First, the Court has discretion to decline to exercise jurisdiction under CAFA if a significant number of plaintiffs in the aggregate *and the primary defendants are citizens of the State in which the* action *was originally filed*. 28 U.S.C. § 1332(d)(3). As neither BPV nor Bard is headquartered or has its principal place of business in Florida, the District Court has no discretion to decline jurisdiction.

Second, the Court must decline jurisdiction if either (a) greater than two-thirds of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed, and at least one defendant is a defendant from whom significant relief is sought by members of the plaintiff class, whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class, and who is a *citizen of the State in which the action was originally filed*; or (b) two thirds or more of all proposed plaintiff classes in the aggregate *and*

*the primary defendants* are citizens of the State in which the action was originally filed. *Id.* § 1332(d)(4). Again, as neither BPV nor Bard is headquartered or has its principal place of business in Florida, this statutory exception does not apply.

Finally, the CAFA removal provisions do not apply to any class action in which the primary defendants are States, State officials, or government entities. *Id.* § 1332(d)(5)(A). As BPV and Bard are private corporations, this exception also does not apply.

### III. <u>PLAINTIFFS SATISFY THE ARTICLE III STANDING REQUIREMENTS FOR PURPOSES OF REMOVAL AND FEDERAL COURT JURISDICTION</u>

Plaintiffs allege that this action is not removable because the named plaintiffs and putative class member seek medical monitoring and thus have not suffered "injury in fact" within the meaning of Article III of the United States Constitution. (Compl. ¶¶ 15-17) In support of this allegation, they rely on a single California federal court case, *Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947 (C.D. Cal. 1999). Plaintiffs' reliance on *Safety-Kleen* is misplaced.

Plaintiffs have made a host of common law claims against the Defendants apparently under Florida law. (*See, e.g.*, Compl. ¶¶ 1-14, Counts I through XIV). Therefore, Florida law substantively governs the availability of medical monitoring relief. The Florida Supreme Court has not addressed a claim for medical monitoring without a physical injury or current manifestation of disease. But Florida's intermediate appellate courts have recognized that even though plaintiffs in a medical monitoring action have yet to suffer a physical injury, it is not accurate to say that no injury has arisen at all. *Petito v. A.H. Robbins*, 750 So.2d 103, 105 (Fla. 3d DCA 2000). An "injury" is defined broadly under Florida law as "the invasion of any legally protected interest of another." *Id.* (quoting Restatement (Second) of Torts § 7). Thus, "[t]he injury in a medical monitoring case is defined as the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm." *Wyeth, Inc. v. Gottlieb*, 930 So.2d

635, 640 (Fla.3d DCA 2007). In both *Petito* and *Wyeth*, the court specifically noted that in Florida, injury is, in fact, a component of a medical monitoring case. This is a critical distinction between Florida law and the California case on which Plaintiffs base their no-injury allegations. Plaintiffs cannot avoid removal by attempting to plead around this fundamental component of their case under Florida law.

As the Eleventh Circuit recently stated, "[l]itigants must show that their claim presents the court with a case or controversy under the Constitution and meets the 'irreducible constitutional minimum of standing.'" *Resnick v. AvMed, Inc.*, No. 11-13694, slip op. at 6 (11th Cir. Sept. 5, 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 1222 S.Ct. 2130, 2136 (1992)). For purposes of removal jurisdiction, Plaintiffs may have denied "present injury" (Compl. ¶16) to try to avoid removal; however, they nonetheless claim a "substantially increased risk" of "filter failure", that they "require regular and frequent medical monitoring", and "will be required to expend money and incur obligations for medical and related expenses" due to Defendants' conduct. *See e.g.,* Compl. ¶¶151-52. That is enough to satisfy the constitutional minimum of standing, especially in light of Florida state law's broad definition of injury for purposes of a medical monitoring claim. As the Eleventh Circuit recognized in *AvMed,* "'[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing." *AvMed, Inc.*, No. 11-13694, at 7 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. at 561, 1222 S.Ct. at 2137. Plaintiff's allegations of substantially increased risk of filter failure and required expenditures due to the cost of medical monitoring, when read in context with Florida law, are enough to show standing for purposes of removal jurisdiction.

To be clear here as well, Defendants do not concede that Plaintiffs are entitled to medical monitoring, either individually or on a class basis. Nevertheless, for purposes of removal and

jurisdiction, Florida law makes clear that Plaintiffs' medical monitoring claim sufficiently alleges an "injury in fact" to satisfy Article III standing.

## IV. DEFENDANTS HAVE SATISFIED ALL PROCEDURAL REQUIREMENTS FOR REMOVAL

### A. Removal Was Timely Filed to the Proper Court.

As is required under 28 U.S.C. § 1446(d), a Notice of Filing Notice of Removal and a copy of this Notice of Removal will be filed with the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. A copy of this Notice is attached hereto as Exhibit E, and will be promptly served on Plaintiffs.

Defendants have removed this action to the proper court, as this Court is part of the "district and division" embracing the place where the Complaint was filed. *See* 28 U.S.C. § 1446(a).

Removal here also is timely. Defendants are entitled to remove this action within 30 days of receipt of service of the Complaint. *Id.* § 1446(b)(1)(B). Defendants were effectively served with the Complaint on August 7, 2012, via process server. Thus, this Notice of Removal is timely.

### B. Defendants Reserve All Other Rights and Defenses

By virtue of this Notice of Removal, Defendants do not waive their right to assert any defense or motion permitted by the Federal Rules of Civil Procedure. Further, no admission of fact, law or liability is intended by the Notice of Removal and all defenses, affirmative defenses and motions are hereby reserved.

Defendants also reserve the right to present additional evidence in support of removal in the event of a motion to remand by Plaintiffs. This includes, but is not limited to, additional evidence relating to the amount in controversy. *See Pretka*, 608 F.3d at 773-74 (permitting

defendant to attach additional evidence regarding the amount in controversy to its opposition to remand).

WHEREFORE, Defendants hereby remove the above-captioned action from the Fifteenth Judicial District Court in and for Palm Beach County, Florida, and request that further proceedings be conducted in the Court as provided by law.

Dated:  September 6, 2012

Respectfully submitted,

*s/ John A. Camp*
John A. Camp
Florida Bar Number 848115
Garth T. Yearick
Florida Bar No. 96105
CARLTON FIELDS, P.A.
100 S.E. 2nd Street, Suite 4200
Miami, Florida 33131
Telephone:  (305) 530-050
Facsimile:  (305) 530-0055
Email:  jcamp@carltonfields.com
        gyearick@carltonfields.com
*Attorneys for Defendants Bard Peripheral Vascular, Inc. and C.R. Bard, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on September 6, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                               *s/ John A. Camp*
                                               Attorney

## SERVICE LIST

*Samantha Bouldry, Eula Huff, Sandra Lorenz, and Janet Roberts, et. al.  v. C.R. Bard, Inc., Bard Peripheral Vascular, Inc., et. al.*
Case No.:
United States District Court, Southern District of Florida

Joseph R. Johnson
BABBITT, JOHNSON, OSBORNE &
LECLAINCHE, P.A.
1641 Worthington Road
Suite 100
P.O. Box 4426
West Palm Beach, FL  33402-4426
Telephone:    561-684-2500
Email:  jjohnson@babbitt-johnson.com
*Counsel for Plaintiff*

**VIA ELECTRONIC MAIL AND**
**U.S. MAIL**